[Cite as *State v. Crawford*, 2023-Ohio-1797.]

COURT OF APPEALS
HOLMES COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | |
| LEWIS CRAWFORD, JR. | : | Case No. 22CA009 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Court of Common
                                 Pleas, Case No. 21CR68



JUDGMENT:                        Affirmed



DATE OF JUDGMENT:                May 30, 2023



APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

ROBERT K. HENDRIX                         JEFFREY G. KELLOGG
164 East Jackson Street                   5 South Washington Street
Millersburg, OH  44654                    Millersburg, OH  44654

*King, J.*

{¶ 1}   Defendant-Appellant, Lewis "Sam" Crawford, Jr., appeals his April 13, 2022 convictions in the Court of Common Pleas of Holmes County, Ohio.  Plaintiff-Appellee is the state of Ohio.  We affirm the trial court.

## FACTS AND PROCEDURAL HISTORY

{¶ 2}   On September 13, 2021, the Holmes County Grand Jury indicted appellant on two counts of compelling prostitution in violation of R.C. 2907.21(A)(2)(a) and three counts of disseminating matter harmful to juveniles in violation of R.C. 2907.31(A)(1). These charges arose from incidents involving J.L., E.M., and L.T., all minors.

{¶ 3}   A bench trial commenced on March 23, 2022.  By journal entry filed April 13, 2022, the trial court found appellant guilty on all counts.  The trial court sentenced appellant to an aggregate term of eighteen months in prison.  Uniform Sentencing Entry filed July 25, 2022.

{¶ 4}   Appellant filed an appeal with the following assignment of error:

I

{¶ 5}   "APPELLANT'S CONVICTION FOR VIOLATING R.C. 2907.21(A)(2)(a), COMPELLING PROSTITUTION WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."

I

{¶ 6}   In his sole assignment of error, appellant claims his convictions for compelling prostitution was against the sufficiency of the evidence.  We disagree.

{¶ 7}   On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction.  *State*

*v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* at paragraph two of the syllabus, following *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶ 8}  Appellant was convicted of two counts of compelling prostitution in violation of R.C. 2907.21(A)(2)(a) which states: "No person shall knowingly * * * [i]nduce, procure, encourage, solicit, request, or otherwise facilitate * * * [a] minor to engage in sexual activity for hire, whether or not the offender knows the age of the minor."

{¶ 9}  " 'Sexual activity' means sexual conduct or sexual contact, or both." R.C. 2907.01(C).

{¶ 10} R.C. 2907.01(A) defines "sexual conduct" as:

vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

{¶ 11} " 'Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."  R.C. 2907.01(B).

{¶ 12} In his appellate brief at 8, appellant admitted the evidence presented at trial established "while in his living room with three juvenile females, [he] was looking at pornographic videos and imagery and that he showed the videos and pictures to the juveniles."  Furthermore, he acknowledged there was testimony, via live testimony and video, that he "offered $20.00 to two of the juveniles to see some girl-on-girl action." Appellant's Brief at 9.

{¶ 13} But appellant argues the $20.00 offer "was not proven, beyond a reasonable doubt, to be a request for the two juveniles to engage in sexual activity for hire."  *Id.*  He further argues "there is reasonable doubt whether he was asking the two females to engage in sexual activity or was requesting to view photographs that the juveniles had in their possession."  *Id.*

{¶ 14} The trial court heard testimony from E.M., L.T., and J.L. regarding appellant showing them pornography and offering them money for a sexual activity.

{¶ 15} E.M., age fourteen at the time of the incident, testified she lived across the hall from appellant.  T. at 19-20.  She was hanging out with her friend J.L. taking selfies. T. at 21.  They went across the hall to appellant's apartment to see E.M.'s sister L.T.  She was not in the apartment with the girls; instead, she had gone over to visit her friend M.Y. who lived in appellant's apartment.  T. at 22.  E.M. and J.L. were showing L.T. the selfies they had taken.  *Id.*  One selfie depicted J.L. kissing E.M.'s cheek.  *Id.*  Appellant saw the

selfie and remarked, "it's hot." *Id.* He also saw a photograph on E.M.'s phone of her wearing "like a bathing suit type thing except like there was like no cleavage whatsoever" and appellant asked if she had any more pictures like that. T. at 26. When told no, he asked "like five (5) more times." *Id.*

{¶ 16} Appellant started talking about wanting to see some "girl-on-girl action." *Id.* E.M. understood girl-on-girl action to mean she and J.L. "having sex." *Id.* The girls said no and he started watching porn on his phone. *Id.* Appellant showed E.M. the video he was watching; E.M. testified she saw a vagina. T. at 27. E.M. heard appellant say he wanted "to see some girl-on-girl action before I go to bed. I'll have a twenty (20) on the counter." T. at 28. Appellant went to the bathroom and the girls left the apartment. *Id.* E.M.'s understanding was that appellant was going to pay her to engage in girl-on-girl action. *Id.*

{¶ 17} On cross-examination, E.M. explained the "bathing suit type thing" was her bra and underwear, but there was no cleavage. T. at 33. When the photograph popped up, E.M. immediately covered it with her hand. *Id.* That is when appellant indicated he wanted to see more photographs like that and asked if she had any porn pictures. T. at 34.

{¶ 18} L.T., age thirteen at the time of the incident, confirmed she was across the hall in appellant's apartment. T. at 40-42. After E.M. and J.L. came over, appellant started watching porn on his phone and showed her an unclothed man and woman engaged in a sexual act. T. at 46-47. L.T. heard appellant say he was going to set $20.00 on the counter for E.M. and J.L. to have sex. T. at 47. L.T. understood his comment "as those two (2) having sex." T. at 54.

{¶ 19} J.L., age fourteen at the time of the incident, testified she was over at E.M.'s apartment taking selfies together before going across the hall to appellant's apartment. T. at 56-57. J.L. testified to appellant seeing the kissing picture and stating it was hot. T. at 58. Appellant then asked to see porn pictures of the girls and they said no. *Id.* He then asked J.L. and E.M. "to do girl-on-girl action." *Id.* at 58-59. She understood it to mean "[d]oing sexual things with each other." T. at 59. They said no. *Id.* J.L. heard appellant say "he would leave twenty dollars ($20.00) on the table if we were going to do that." *Id.* J.L. then observed appellant watching lesbian porn on his phone. *Id.* J.L testified appellant showed her what he was watching. *Id.* She secretly took a video "because I was just nervous." T. at 60. She also took the video of appellant asking the girls "to do girl-on-girl action." *Id.* After the girls said no, appellant told them to "keep our f'ing mouth shut." *Id.* J.L. gave her videos to the police. T. at 61-63; State's Exhibits 2 and 3. The videos were played and J.L. confirmed they were her videos. T. at 62.

{¶ 20} State's Exhibit 3 is audio only. The following conversation can he heard:

[Man's Voice]: If you're gonna have girl-on-girl action I want to see some action before I go to bed.

[Girl's Voice]: I'm okay thank you.

[Man's Voice]: I'll leave $20 on the counter [inaudible]

[Girl's Voice]: You're gonna pay us?

[Man's Voice]: Fuck yeah I will.

{¶ 21} On cross-examination, J.L. testified "I'm not sure exactly what he would want us to do, but he was looking at videos of girls doing girl-on-girl action, which I would think it would be a sexual term that he was asking us to do." T. at 68.

{¶ 22} Captain Kim Herman of the Millersburg Police Department investigated the matter the next day. He took statements from the three girls and received the two video clips. T. at 7. He then spoke to appellant while wearing a body camera. State's Exhibits 1 and 4. Appellant knew the girls were under the age of eighteen, but he claimed to be drunk the night before and "we was (sic) joking around." State's Exhibit 1. He could not recall anything and "couldn't remember asking the girls to perform an act for money or showing them pornography." T. at 8.

{¶ 23} Appellant reviewed the two video clips in Captain Herman's possession and admitted it was him in the videos. T. at 9. He stated everything he did "was 110% wrong" and "I fucked up big time." State's Exhibits 1 and 4. When asked what girl-on-girl action meant to him, appellant stated "playing with each other underneath the blanket and kissing in the chair, nothing sexual going on." State's Exhibit 4. He added girl-on-girl action meant two girls "touchy-feely" and "making out." *Id.*

{¶ 24} The trial court found the state established beyond a reasonable doubt that appellant "induced, encouraged, and requested" J.L. and E.M., two minors, to engage in sexual activity for hire. Court's Verdicts filed October 21, 2022.

{¶ 25} After viewing the evidence in a light most favorable to the prosecution, we find any rational trier of fact could have found the essential elements of compelling prostitution under R.C. 2907.21(A)(2)(a) were proven beyond a reasonable doubt. Appellant knowingly induced, encouraged, solicited, and/or requested E.M. and J.L., both

minors, to engage in sexual activity. Appellant was asking the girls for pornographic pictures, was watching porn on his phone, and asked for girl-on-girl action. Given the context, appellant's "girl-on-girl action" remark referred to sexual activity. The trial court did not err in concluding he was not requesting to view photographs that the girls had in their possession as he argues. He had already asked the girls multiple times to view photographs and was told no.

{¶ 26} Upon review, we find sufficient evidence, if believed, to support the convictions for compelling prostitution. The evidence presented was sufficient to support a finding that appellant suggested the girls engage in sexual activity when he offered to pay for "girl-on-girl action."

{¶ 27} The sole assignment of error is denied.

{¶ 28} The judgment of the Court of Common Pleas of Holmes County, Ohio is hereby affirmed.

By King, J.

Gwin, P.J. and

Wise, J. concur.